Gary Neal **RAYBURN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–87–00179–CR.

Court of Appeals of Texas, Tyler.

March 15, 1988.

Howard D. Pattison, Athens, for appellant.

Billy M. Bandy, Dist. Attys. Office, Athens, for appellee.

COLLEY, Justice.

This is an extradition case. Gary Neal Rayburn appeals from the court's order denying his discharge from custody under a writ of habeas corpus.

On July 28, 1987, Texas Governor W.P. Clements issued a warrant for the arrest of Rayburn in response to a requisition from the Honorable Roy Romer, Governor of the State of Colorado. Rayburn was arrested by authority of the Governor's warrant. Thereafter, he filed an application for writ of habeas corpus. The writ was granted and a hearing thereon was conducted by the trial court on August 28, 1987. The court declined to grant the relief sought and remanded Rayburn to custody for re-

moval to the State of Colorado. We will affirm that order.

Rayburn presents two points of error. Under his first point, he contends that the court erred in refusing to order his discharge from custody because the application by the Colorado District Attorney to the Colorado Governor for a requisition for his extradition to Colorado was not verified.

By his second point Rayburn contends the trial court erred in failing to grant him habeas relief because the State failed to prove that he was present in Colorado during the time of the commission of the alleged crimes.

At trial, the State introduced one exhibit containing, inter alia, the following papers, to wit:

1. The requisition of the Honorable Roy Romer, Governor of the State of Colorado, attested by a Deputy Secretary of State;

2. Governor Romer's appointment of an agent to receive and transport Rayburn to Colorado;

3. The application of Victor Reichman, District Attorney of LaPlata County, Colorado, for the requisition of Rayburn;

4. Affidavit for Rayburn's arrest made by Deputy Sheriff Jerry Abernathy before the Honorable Patricia A. Hall, LaPlata County Court Judge;

5. Warrant for arrest of Rayburn signed by Judge Hall; and

6. Executive warrant signed by Honorable W.P. Clements, Governor of Texas, for Rayburn's arrest and extradition, sealed and attested by the Texas Secretary of State.

Reichman's application was not verified, but was accompanied by the affidavit and arrest warrant. The affidavit alleged, and Judge Hall found by the terms of the warrant, that probable cause was established that Rayburn committed the felony offenses of criminal mischief and theft in LaPlata County, Colorado, between the dates of November 1 and November 4, 1985, as alleged in the affidavit.

The requisition signed by Governor Romer recites, in part:

WHEREAS, from the attached application for requisition and copies of the warrant, affidavit and supporting documents, which I certify are authentic under the laws of Colorado, Gary Rayburn stands charged with the crime [sic] of criminal mischief [and] theft committed in this State was present in the State at the time of the commission of the crime [sic] fled from the justice of this State, and is now in the State of Texas; . . . .

Extradition of persons charged with a crime in one state who flee to another State is controlled by U.S. Const. art. IV, § 2, cl. 2 and Acts of the Congress of the United States implementing such constitutional provision, subject to other applicable provisions of the United States Constitution. *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978).

U.S. Const. art. IV, § 2, cl. 2 reads as follows, to wit:

A Person charged in any State with Treason, Felony or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

In 1793, the Congress of the United States adopted an act implementing the foregoing constitutional provision. The current statute is virtually identical with its 1793 precursor.[1] The statute as presently constituted is 18 U.S.C. § 3182 (1985) which reads, in part, as follows:

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with hav-

---

1. *See Doran,* 439 U.S. at 287, 99 S.Ct. at 534.

ing committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured ... and shall cause the fugitive to be delivered to [the agent of such authority]....

As the Court observed in *Doran*, "Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Article IV, § 2, cl. 2 of the Constitution." *Id.* at 288, 99 S.Ct. at 535. (Citation omitted.) Indeed, the Court declared in *Doran* that courts in the asylum states are bound by the provisions of Article IV in such proceedings, and in habeas corpus proceedings following the issuance of the warrant by the Governor of the asylum state, the habeas court may only consider and decide:

> (a) Whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

*Doran*, 439 U.S. at 289, 99 S.Ct. at 535.

■ Rayburn claims in his first point that because the application for the requisition was not verified as required by article 51.13, section 23,[2] his arrest was illegal. We do not agree. The court in *Doran* stated:

> Whatever the scope of discretion vested in the governor of an asylum state, *cf. Kentucky v. Dennison*, 24 How. 66, 107, 16 L.Ed. 717 (1861), the courts of an asylum state are bound by Art. IV, § 2, *cf. Compton v. Alabama*, 214 U.S. 1, 8, 29 Ct. 605, 607, 53 L.Ed. 885 (1909), by § 3182, and, where adopted, by the Uni-

form Criminal Extradition Act. A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. (Citation omitted).

*Doran*, 439 U.S. at 288, 289, 99 S.Ct. at 535.

It seems clear from our reading of *Doran* that extradition proceedings are controlled by the quoted U.S. Constitutional provision and 18 U.S.C. § 3182, and the Uniform Criminal Extradition Act to the extent that that Act, a state statute, is not repugnant to, or inconsistent with either the constitutional provision or 18 U.S.C. § 3182. Section 3182 does not require that the executive officer of the demanding state must receive an application before he may issue a requisition for the return of a fugitive. Rather, section 3182 provides that when the executive authority of the asylum state receives a "demand" for a fugitive from justice from the executive authority of the demanding state,

> [Accompanied by] a copy of an indictment found or an affidavit made before a magistrate [of the demanding state] ... charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor ... of the State ... from whence the person so charged has fled, the executive authority [of the asylum state] ... shall cause him [the fugitive] to be arrested ... [and] delivered [to the agent of the executive authority of the demanding state]....

Thus, when the Court in *Doran* observed that the habeas court in the asylum state can decide "(a) whether the extradition documents on their face are in order," the Court was, in effect, stating that the documents forwarded by the demanding state must conform to the requirements of the U.S. Constitution and 18 U.S.C. § 3182. In

---

**2.** Tex.Code Crim.Proc.Ann. art. 51.13, § 23–13 (Vernon 1984). All references to either articles or sections hereinafter made are to the Texas Code of Criminal Procedure (Vernon 1984), unless otherwise indicated.

   Section 23–3 of article 51.13 provides in part:
   The application shall be verified by affidavit, ... and shall be accompanied by two

certified copies of the indictment ... or information and affidavit filed.... The prosecuting officer ... may also attach such further affidavits and other documents ... as he shall deem proper to be submitted with such application.

this case, the requisition of Governor Romer was accompanied by certified copies of an affidavit made before Magistrate Hall charging Rayburn with two felony offenses against the laws of Colorado, as well as an arrest warrant signed by Judge Hall based on that affidavit. The affidavit states that probable cause exists that Rayburn committed the offenses, and Judge Hall expressly so found.

■ Governor Romer's requisition meets all of the requirements of the federal statute. Assuming that the Colorado version of the Uniform Criminal Extradition Act contains a provision identical with article 51.13, section 23, 3, we hold that the habeas court in the asylum state may not look behind the requisition[3] and its supporting documents. Any conclusion to the contrary would operate to frustrate the "summary and mandatory executive proceeding derived from the language of Art. IV, § 2, cl. 2 of the Constitution." *Doran*, 439 U.S. at 288, 99 S.Ct. at 535 (citations omitted). *Cf. Ex parte Davis*, 586 S.W.2d 536, 537 (Tex.Cr.App.1979). Rayburn's first point is overruled.

■ Rayburn contends under his second point that he should have been discharged from custody by the trial court because the State of Texas failed to establish that he was present in Colorado at the times of the commission of the offenses. In our view, article 51.13, section 3 does not require the asylum state to prove in a habeas corpus hearing that the person accused of committing a crime in the demanding state "was present in the demanding state at the time of the commission of the alleged crime."[4] The section requires only that the written requisition from the executive authority of the demanding state *allege* such facts. The truth of the allegations is reserved for determination by the courts of the demanding state at the trial of the accused in which the guilt-innocence of the accused is determined. *Cf. Doran*, 439 U.S. at 288, 99 S.Ct. at 535.

The Court of Criminal Appeals, in a later case, *Ex parte Trisler*, 605 S.W.2d 619, 620 (Tex.Cr.App.1980), stated that the asylum state bears the burden to establish "only a *prima facie* case" that the accused was present in the demanding state at the time of the offense, but added, "Appellant produced no evidence to rebut the state's *prima facie* case." (Emphasis in original.)

■ As we read *Doran*, the habeas court in extradition proceedings need not decide whether the accused was present in the demanding state at the time of the offense in order to determine that the accused is a "fugitive from justice" within the meaning of article IV, section 2, cl. 2 of the United States Constitution. The clear implication of the language in *Doran* is that if the requisition of the executive authority of the demanding state alleges that the accused was present in that state at the time of the offense charged against him, and thereafter flees, and the requisition is otherwise sufficient, the governor of the asylum state is required to issue the executive warrant and no factual inquiry as to the truth of the allegations made in the requisition should be made by the habeas court in the asylum state. Stated another way, testimony or other evidence offered by the accused or the state respecting the whereabouts of the accused on the date of the commission of the offenses charged against him is inadmissible because it is relevant only to the issue of the accused's guilt or innocence, triable only in the courts of the demanding state. Only those issues outlined by the court in *Doran*, 439 U.S. at 289, 99 S.Ct. at 535, should be tried by the

---

**3.** The issue of the validity of the requisition should be litigated in the courts of the demanding state. *See Doran*, 439 U.S. at 290, 99 S.Ct. at 536.

**4.** We are aware of several *pre-Doran* decisions by the Texas Court of Criminal Appeals in which the court seems to recognize that such a burden exists. The rationale seems to be that such proof is necessary to establish that the

accused is a "fugitive from justice." *E.g., Ex parte Wooten*, 151 Tex.Crim. 233, 206 S.W.2d 261, 262 (1947). In these cases the court holds that the issuance of the Texas Governor's warrant establishes a *rebuttable* prima facie case that the accused was in fact present in the demanding state at the time of the commission of the offenses charged against him. *See Ex parte Cole*, 408 S.W.2d 107 (Tex.Cr.App.1966).

habeas court in the asylum state. Rayburn's second point of error is overruled.

The judgment is affirmed.